WILLIAM VAN HOOK, APPELLANT, v. THE SOMERVILLE MANUFACTURING COMPANY, LUTHER LOOMIS AND SAM-UEL P. LYMAN, RESPONDENTS.

[The reporter is indebted to Justice WHITEHEAD for the following syllabus and report of this case.]

1. On bond and mortgage by corporation, bill to foreclose and decree *pro confesso* against the corporation and some of the defendants; an answer by the other defendants admitting the execution in the manner set forth in the bill of complaint, precludes all inquiry into the fact and manner of execution.

2. The company executed a bond and mortgage to S., its financial agent, for $9600, for the purpose (as alleged in the answer) of raising funds by the sale of these securities for the use of the company. S. sold and assigned them to the complainant and appropriated the proceeds of the sale to his own use. *Held*, that, admitting the fraud charged, the company was still liable for the payment of the bond and mortgage in the hands of *bona fide* purchasers without notice of the fraud. The company having held out S. as the owner of the bond and mortgage, must, in such case, abide the consequences of the fraudulent conduct of its own agent.

3. Upon an examination of the testimony of this case—*held*, (contrary upon this point to the view taken by the Chancellor,) that there was no satisfactory evidence of any knowledge by the complainant of the alleged fraud of the agent; that the complainant stood in the position of a *bona fide* purchaser and assignee of the bond and mortgage, and held a valid and subsisting lien on the mortgaged premises.

4. The defendants, Loomis and Lyman, took a conveyance from the corporation, of the mortgaged premises, absolute on its face, but subject to a separate agreement signed by them and others, that they would hold said premises for the benefit of themselves and such of the parties to said agreement as should pay, *pro ratâ*, for the purchase, according to their respective interests. No trust appearing on the face of the conveyance to Loomis and Lyman, and it not appearing in any way that the others had contributed to the purchase and thereby become interested—*held*, that the latter need not be made parties to the suit.

The appellant, on the 30th June, 1843, filed his bill in the court below, to foreclose a bond and mortgage given by the said company to Jared N. Stebbins, dated 10th January, 1842, to secure the payment of $9600 on the 5th January, 1845, with interest annually. The bill sets forth the execution of the bond and mortgage, the acknowledgment and registry of the latter,

and an assignment by Stebbins to the complainant, on the 25th day of July, 1842, and that no part of the principal or interest had been paid. The bill states a judgment recovered October 4th, 1842, in Somerset Circuit Court, by Joshua Doughty against the company, for $2352 of debt, besides costs; also by the State Bank at Elizabeth, in the same court, for $1352.52 debt, besides costs; which are claimed to be liens on the mortgaged premises. It also states that on the 16th October, 1842, the company conveyed the mortgaged premises to Loomis and Lyman, two of the defendants. That Henry Ibbotson, another defendant, on the 22d October, 1842, recovered a judgment in said Circuit Court against the company for $1190, besides costs, also claimed to be a lien on said premises. That Ibbotson had filed his bill in chancery against the company and Loomis and Lyman to set aside the conveyance to the latter, and to enforce the payment of his judgment against the said mortgaged premises. The complainant, Van Hook, insists upon his preference, and the bill then prays that the company may be decreed to pay the amount due upon the mortgage, and that in default thereof, the mortgaged premises be sold for that purpose, &c.

A decree *pro confesso* was taken in October, 1843, against the company, Doughty, the Bank at Elizabeth and Ibbotson.

Loomis and Lyman filed their answer to the bill. They admitted the execution of the bond and mortgage to Stebbins, but denied their validity. They denied any indebtedness of the company to Stebbins, and proceeded in their answer to set out the circumstances under which, as they alleged, these instruments were executed. That they were executed in order to enable Stebbins to raise money by sale of these securities, and thereby evade the law restraining the rate of interest. The answer sets out the indebtedness of the company, and the necessities which constrained it to resort to this mode of raising money. That a false certificate was given by the president of the company to Stebbins, for the purpose of enabling the latter to deceive persons into the belief that the amount for which the securities purported to have been given was really due, contrary, as the answer alleged, to the fact. That Stebbins failed to make any contract for the loan of money; but afterwards, and about the 11th July, 1842, agreed to transfer the bond and

mortgage on his own account, to the complainant, in exchange for certain lots of leasehold property in the city of New York, which agreement, they averred, was without authority and without consideration, fraudulent, and intended to injure the defendants.

The answer further states that, on the 25th July, 1842, Stebbins fraudulently assigned the said bond and mortgage, in pursuance of said fraudulent agreement, and, on the 1st August, 1842, procured the assignment to be recorded in the clerk's office of Somerset, as a cover to the said fraud, but that, as the defendants were informed and believed, the bond and mortgage were not delivered to the complainant until the 29th September, 1842. That a conveyance was made to a son of Stebbins, by the complainant, in pursuance of said fraudulent agreement, of the lots proposed to be given in exchange for the bond and mortgage, by an instrument in writing, dated 11th July, 1842, and recorded in New York, for the nominal consideration of $10,000, and that the said conveyance to the son was to cover the fraud of Stebbins and the complainant. That all this was done with full knowledge and notice, by the complainant, of the circumstances attending the execution of the bond and mortgage, and of the purposes with which done. The answer further alleges that the complainant employed an agent to procure the *post facto* passage of resolutions by the managers of the company, for the purpose of covering the said fraud, and charges that the transaction is fraudulent and void.

The answer proceeds to set out, at length, the interest of the defendants Loomis and Lyman, in the mortgaged premises, and, to assert the validity of the conveyance to them, of the same, by the company, denies all unlawful combination, and prays that the bill may be dismissed.

The complainant filed the usual replication, and the cause was thus put at issue.

The testimony, which was voluminous, is stated at large, in the report of the case below, and it is unnecessary to be here repeated. The exhibits set out in the answer, or shown in evidence below, also appear in the same report. See 1 *Halsted's Chan. Rep.* 137–186. The Chancellor sustained the defence, and dismissed the bill.

The cause was argued on the appeal, by P. D. *Vroom* and *A. Whitehead*, for the appellant, and by

*B. Williamson* and *S. P. Lyman* (of New York), for the respondents.

The opinion of the court was delivered by WHITEHEAD, J.

The first question for the consideration of the court, is whether the mortgage set forth in the bill of complaint, is the deed of the company. So far as regards these parties, and under the pleadings in the cause, this cannot be an open question. The answer of the defendants distinctly admits that the company executed the bond and mortgage in the manner set forth in the bill of complaint. This admission precludes all inquiry into the fact or the manner of the execution. It was not a matter in issue in the cause, and the defendants were not at liberty to controvert it. If this be the law of the case, then it is entirely unnecessary and irrelevant to inquire whether the several meetings of the managers were regular and in pursuance of their charter, or whether any of the managers who took part in the proceedings of the meetings were competent to act.

Assuming, then, that the bond and mortgage were regularly executed, the next question raised by the counsel, is whether they were given for a valuable consideration. But, upon this question, it is not necessary for the court to express an opinion. Admitting that there was no consideration, and that they were given for the purposes alleged by these defendants, how does the case then stand upon the evidence? Stebbins, the mortgagee, was, and had been, for two years or more previous to the 5th day of January, 1842, when it was resolved by the board to give the mortgage, the acknowledged financial agent of the company, at a salary of $3000. Under these circumstances, it is fair to presume that he had the entire confidence of the managers and stockholders. The company were, at this time, in need of money to discharge claims pressing for payment, and to put the works in operation. He was authorized by the board, as its agent, to negotiate the mortgage. It was placed in his hands for the purpose. The board of managers held him out to the world as the *bona fide* holder of it, with all the presumptions

the law would raise, from the possession of it by him, that it was given for a valuable consideration. If, under these circumstances, and clothed with this authority, he negotiated the mortgage as his own property, given for a valuable consideration, he did no more than he was authorized to do by the managers. He was simply carrying out their intentions, as expressed in their recorded resolutions, copies of which were furnished him for the purpose. In this view of the case, even if he did commit a fraud upon the company, as is insisted by the defendants, the company is nevertheless bound for the payment of it, unless the complainant took the assignment with notice of the fraud. The company must abide the consequences of the fraudulent conduct of its own agent.

It is said, however, that Mr. Van Hook had notice of the fraud by Stebbins, and that, therefore, the mortgage is void in his hands. No satisfactory evidence is to be found in the case of a combination between Stebbins and Van Hook, or that the latter regarded the mortgage otherwise than as a fair and *bona fide* transaction between the company and Stebbins. The conduct of the complainant relied upon as evidence of fraud, or as evidence of his knowledge of the fraudulent intentions of Stebbins, is his employment of counsel to look into the circumstances under which the mortgage was given; and the conduct of the counsel in asking an additional resolution to be passed by the board, that the bond and mortgage were a legal and subsisting liability of the company; and the further certificate of the president, Mr. Gaston, that the same were given by the order of the board of managers, and that the amount thereof was due Mr. Stebbins. Nothing is seen in all this furnishing the slightest evidence of fraud. It is but the prudent action of a careful man. Considering the amount of the mortgage, and the fact that the complainant resided out of the state, there was an apparent necessity that he should employ counsel in this state to examine the company's title to the mortgaged premises, and to ascertain whether the board had complied with all the requisitions of the law to constitute the mortgage a valid security. The charge of fraud might much more properly have been made against the complainant, had he purchased the mortgage for this large amount without any examination by counsel. Nor

can fraud be inferred from the action of the complainant's counsel in the premises. They did no more than any prudent, faithful counsel would have done under like circumstances.

The testimony of Mr. Gaston, detailing what took place in his interview with the complainant at Somerville, is relied upon as evidence of notice on the part of the complainant of the object for which the mortgage was given. In relation to this testimony, it should be remarked that the object of Mr. Van Hook's visit to Somerville was not to examine the title to the mortgaged premises, nor the circumstances under which the mortgage was given, but simply to satisfy himself of the value of the premises. This is proved by the other testimony in the cause, and Mr. Gaston himself says that *he* (Mr. Van Hook) *came out to look at the property.* He says further, *that Mr. Van Hook made several inquiries respecting the value of the premises.* This was the whole object of his visit, and was necessarily the principal subject of conversation. All the other matters connected with the affairs of the company, about which Mr. Gaston says they conversed, were matters in which Mr. Van Hook had but little interest. It would be dangerous to fix a party with notice of fraud by a casual conversation upon matters in which the party sought to be charged had but little or no interest.

Again. It is said (in the defendant's own language) that no decree favorable to the complainant can be made until all the persons interested are made parties to the suit. The persons referred to are the parties of the second part to the memorandum of an agreement dated in October, 1842. The allegation is, that they are interested under and in pursuance of that agreement, and should have been made parties with these defendants. The question presented is, does the simple execution of the agreement by these parties, without any other or further act done by them, give them such an interest as to make it necessary to bring them into court as defendants? By the terms of the agreement it was contemplated that something further was to be done by the parties, in the event of a purchase by Loomis and Lyman, before they could be interested in the purchase. They might, or they might not become interested. They **had** the option to protect their respective equitable interest by

making *pro ratâ* advances. If they refused or neglected to make these advances, they certainly had no interest in the purchase afterwards made. The agreement in that case, as to them, was a dead letter. But if they did avail themselves of the option made them by the defendants, (Loomis and Lyman,) so as to entitle themselves to share in the benefits contemplated by the purchase, then the *fact* that they did contribute and thereby became interested, ought to appear either in the answer or in the proofs. Now this fact nowhere appears in the cause. In the absence of any allegation or proof of the kind, they cannot be regarded as parties in interest. The simple fact that they signed the agreement referred to, does not of itself invest them with such an interest as required the complainant to bring them before the court as parties defendants.

Again. The deed from the company to these defendants is absolute upon its face. There is nothing showing a trust.

We are of opinion that the mortgage is not fraudulent, but a valid lien and encumbrance upon the premises therein mentioned and described; and that the complainant is entitled to the relief sought and prayed for by him in his bill of complaint.